IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ADVANCED INTERNATIONAL MARKETING, LLC            PLAINTIFF

v.            CASE No. 5:17-cv-05086

LXR BIOTECH, LLC            DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Defendant's Motion to Transfer (Doc. 11) and Brief in Support (Doc. 12), and Plaintiff's Response in Opposition (Doc. 14) and Brief in Support (Doc. 15). On September 25, 2017, the Court conducted a hearing and **DENIED** the Motion to Transfer from the bench. The purpose of this Opinion and Order is to memorialize the bases for the Court's ruling. To the extent anything in this Order differs from what the Court stated from the bench, this Opinion and Order shall control.

### I. BACKGROUND

Plaintiff Advanced International Marketing, LLC ("AIM") is an Illinois limited liability company with a principal place of business in Algonquin, Illinois. Defendant LXR Biotech, LLC ("LXR") is a Michigan limited liability company with a principal place of business in Auburn Hills, Michigan. AIM is a sales representative company. LXR is a manufacturing company that produces various products including liquid energy shots that are sold in retail and convenience stores.

On August 5, 2014, the parties entered into an agreement ("Agreement") where they contracted that AIM would serve as LXR's sales representative for all LXR products

1

within AIM's market territory.[1] The Agreement states that the parties' initial Term of Agreement is five years and that AIM will be compensated based on a Performance Fee. Specifically, LXR contracted to pay AIM five percent of its net sales. Concerning the Walmart account, LXR agreed to pay AIM on sales made to Walmart only for monthly sales in excess of the lower of "net sales dollars shipped to Walmart during the 30 days immediately prior to the execution of this Agreement or the equivalent sales dollars of 300,000 2.0 oz. bottles of LXR products." (Doc. 1-1, p. 6). Along with commissions, LXR agreed to send AIM commission statements that displayed commission calculations and a list of invoices covered by the commission statement. *Id.* at 7.

AIM alleges that it successfully sold LXR's products to both Walmart and Walgreens. Eventually, AIM asserts, LXR stopped paying AIM its due commissions for the Walmart and Walgreens accounts and failed to provide AIM with any commission statements. In February, 2016, LXR unilaterally terminated the Agreement pertaining to the Walmart account. Following the termination, AIM alleges that it sought to cure the failure in performance and recover its earned commissions for the Walmart account. However, LXR did not pay, provide commission statements, or effectively communicate with AIM.

On May 17, 2017, AIM filed suit in this Court. Principally, AIM alleges that LXR breached its agreement with AIM, breached the implied covenant of good faith and fair dealing, and violated the Arkansas Sales Representative Commission Act ("ASRCA"). On July 28, 2017, LXR filed its answer to AIM's Complaint; it denied all of AIM's

---

[1] The Agreement states that AIM's territory includes Walmart, Walmart.com, and Sam's Club. (Doc. 1-1, p. 11).

allegations and asserted a lack of jurisdiction, improper venue, and various affirmative defenses. Along with its answer, LXR also filed a Motion to Transfer (Doc. 11) the case to the U.S. District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). This Motion centers around the Agreement's forum-selection clause. The clause states:

> This Agreement shall be construed and governed in accordance with the laws of the State of Michigan and the federal laws of the United States applicable therein, without regard to principles of conflict of law, and any action arising out of this Agreement shall be bought in the courts of Michigan or Federal Court located in the Eastern District of Michigan.

(Doc. 1-1, p. 8). Additionally, LXR argues that AIM "flouted" the Agreement by ignoring the forum-selection clause and filing suit in Arkansas. (Doc. 12, p. 2).

On August 11, 2017, AIM filed its response opposing LXR's Motion to Transfer (Doc. 14) while admitting that the Agreement contains a forum-selection clause. AIM contends that the forum-selection clause is void due to the application of the ASRCA, which is an Arkansas statute. *See* Doc. 15, pp. 3-5.

## II. LEGAL STANDARD

### A. Enforceability of the Forum Selection Clause

Whether a forum-selection clause is valid is a procedural question that is governed by federal law. *Bright Harvest Sweet Potato Co., Inc. v. H.J. Heinz Co., L.P.*, 2013 WL 2458685, at *2 (W.D. Ark. June 6, 2013). "When the parties have agreed to a valid forum-selection clause," the district court should transfer the case to the pre-negotiated jurisdiction. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for the W.D. of Tex.*, 134 S.Ct. 568, 581 (2013). Only in narrow, "extraordinary circumstances unrelated to the convenience of the parties should a [motion to transfer pursuant to] § 1404(a) be denied."

3

*Id.*; *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) (forum-selection clauses are prima facie valid, and "the forum clause should control absent a strong showing that it should be set aside"). The Eighth Circuit has reaffirmed this holding. *See M.B. Restaurants, Inc. v. CKE Restaurants, Inc.*, 183 F.3d 750, 752 (8th Cir. 1999) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590-95 (1991)) ("[Forum-selection clauses] are enforceable unless they would actually deprive the opposing party of [its] fair day in court."). The party challenging a forum-selection clause bears a "heavy burden of proof" when trying to avoid its enforcement. *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006) (citing *Bremen*, 407 U.S. at 17).

### B. Appropriateness of Transferring Venue

When evaluating a motion to transfer pursuant to 28 U.S.C. § 1404(a), absent a forum-selection clause, courts must consider the convenience of the parties and the public interest. *Rob & Bud's Pizza, LLC v. Papa Murphy's Intern.*, 2015 WL 3901611, at *4 (W.D. Ark. June 24, 2015) (citing *Atl. Marine*, 134 S.Ct. at 581 n.6). The parties' convenience factors include their access and ease of access to sources of proof, the availability of witnesses, the possibility that a view of the premises would be necessary, and any other realistic problems that make trial easy. *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public interest factors include the administrative difficulties pertaining to court congestion, the state's local interest in the dispute, the interest in having a court in a diversity case apply the forum-state law that governs the suit, the ability to avoid unnecessary conflicts of law problems, and "the

4

unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* (citations omitted).

## III. DISCUSSION

### A. Enforceability of the Forum Selection Clause

Here, the principal issue is whether the application of the ASRCA is a strong public-policy consideration that voids the forum-selection clause. This Court has stated that "consideration of [Arkansas] . . . public policy" is vital in a motion to transfer analysis. *Rob & Bud's Pizza,* 2015 WL 3901611, at *2 (quoting *Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 974 (8th Cir. 2012)). When a state's public policy directly invalidates a forum-selection clause a district court should not enforce the pre-negotiated clause. *Id.* For example, in *Union Electric Co. v. Energy Insurance Mutual Ltd.*, the Eastern District of Missouri, following a remand from the Eighth Circuit, held that a forum-selection clause should not be enforced because "parties cannot waive or change public policy by agreement." 2013 WL 5291701, at *3 (E.D. Mo. Sept. 19, 2013) (citation omitted); *see also Rob & Bud's Pizza,* 2015 WL 39001611, at *2 (holding that the Arkansas Procedural Fairness for Restaurant Franchisees Act is a legitimate public-policy consideration that renders a forum-selection clause between the two parties unenforceable).

For the ASRCA to invalidate a forum-selection clause, it must apply to the parties' particular agreement. The ASRCA states that "[a] contract between a principal and a sales representative . . . within [Arkansas] must be in writing and set forth the method by which the sales representative's commission is to be computed and paid." Ark. Code

5

Ann. § 4-70-302(a) (West 1989). A sales representative under the statute is a person or company that solicits business on behalf of a principal, *id.* at § 301(3), and a principal is a person or company that does not have a permanent place of business in Arkansas and uses a sales representative, which it compensates by commission, to solicit orders for its products, *id.* at § 301(2). Regarding jurisdiction, the ASRCA states that a principal who does not reside in Arkansas is considered to be doing business in Arkansas when it enters into an agreement pursuant to this subchapter. *Id.* at § 304. Moreover, §§ 302(c) and 305 set forth Arkansas's public-policy consideration and provide that parties may not waive any provisions of this subchapter by entering into a contract subject to the laws of another state, and that any contract establishing venue in another state for an action arising under the ASRCA is void.

The facts here indicate that the ASRCA is applicable to the parties and invalidates the forum-selection clause. LXR retained AIM as a representative, agreed to compensate AIM through commission payments, and qualifies as a principal under the ASRCA. *See* Doc. 1-1, p. 2. Because the ASRCA is applicable, the forum-selection clause is void based on Arkansas's intention to keep litigation pursuant to the statute within the state.

### B. Appropriateness of Transferring Venue

Because the ASRCA expressly voids the forum-selection clauses, the Court must now consider the convenience of the parties and the public interest pursuant to 28 U.S.C. § 1404(a). *Rob & Bud's Pizza*, 2015 WL 39001611, at *4. These factors include, primarily, the interest in having a diversity case under the ASRCA heard in Arkansas and the convenience of the parties. *See id.* (citing *Piper Aircraft Co.*, 454 U.S. at 241 n.6).

6

Here, Arkansas has a strong public-policy interest in these particular cases being heard within Arkansas. The fact that the Agreement directly implicates Walmart justifies this controversy being resolved in this Court. AIM states in its brief opposing LXR's Motion to Transfer that several potential witnesses have personal information concerning "AIM's efforts on behalf of LXR" and Walmart's corporate office maintains all necessary sales records "for AIM to calculate its unpaid commissions." Doc. 15, p. 6. The convenience factor therefore weighs against transferring the case.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Transfer (Doc. 11) is **DENIED**.

IT IS SO ORDERED on this 23rd day of October, 2017.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE